IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ANDREW L.**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

Civ. No. 3:21-cv-01681-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Andrew L. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for Supplemental Security Income ("SSI") disability benefits. Full consent to magistrate jurisdiction was entered on January 2, 2022 (Dkt. #7). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED.

## BACKGROUND

Plaintiff is a 23-year-old who alleges he is unable to work due to mental and physical impairments. Plaintiff filed an application for Supplemental Security Income benefits on April 14, 2019. Tr. 15. In his application, Plaintiff claimed disability with an alleged onset date of June 14, 2012. Tr. 15, 172. The claim was denied initially on August 6, 2019, and upon reconsideration on March 30, 2020. Tr. 15. A hearing was held on December 1, 2020, before

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

Administrative Law Judge John Michaelsen. Tr. 32-60. On January 12, 2021, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled from the alleged onset date, through the date of decision. Tr. 12-31. On September 27, 2021, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, he is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

2 - Opinion and Order

    3.       Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

           a.     The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

    4.       Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

    5.       Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or he is disabled.

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

3 - Opinion and Order

Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

### THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since April 14, 2019, the SSI application date. Tr. 17.

2. Plaintiff has the following severe impairments: obesity; depression; anxiety; and post-traumatic stress disorder (PTSD) (20 CFR 416.920(c)). Tr. 17.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). Tr. 18.

4. Plaintiff has the residual functional capacity to "light work as defined in 20 CFR 416.967(b), except he can frequently bend, stoop, crouch, squat, crawl, kneel, and climb. He can frequently reach, handle, finger, and feel with his bilateral upper extremities. The claimant must avoid concentrated exposure to dust, fumes, gases, poor ventilation, and other noxious odors. He is limited to carrying out simple, repetitive, routine tasks. He can have no more than occasional contact with co-workers and the public." Tr. 20.

5. Plaintiff is unable to perform any past relevant work. Tr. 25.

6. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy, such as small product assembler I, housekeeping cleaner, and folding machine operator. Tr.26.

7. Plaintiff has not been under a disability, as defined in the Social Security Act, since April 14, 2019, the alleged onset date. Tr. 26.

### STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence ... is such

4 - Opinion and Order

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly discounted Plaintiff's subjective symptom testimony for clear and convincing reasons, and
2. Whether the ALJ properly evaluated the medical opinions from Collin Blattner, D.O., Paul Haddeland, M.D., Scott Kaper, Ph.D., and Kevin Santulli, Ph.D.

For the following reasons, the Court finds that the ALJ erred in evaluating Plaintiff's subjective symptom testimony and the medical opinions regarding his mental health impairments. The decision of the Commissioner is reversed and remanded for further proceedings.

## I. The ALJ failed to provide clear and convincing reasons to discount plaintiff's subjective symptom testimony

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

6 - Opinion and Order

### A. The ALJ improperly discounted plaintiff's symptom testimony, resulting in reversible error

Plaintiff reported physical limitations related to debilitating fatigue, somnolence, and heat intolerance at his hearing. At step one of the two-step analysis, the ALJ found "claimant's medically determinable impairments [including severe fatigue, somnolence, and heat intolerance] could reasonably be expected to cause the alleged symptoms." Tr. 21. The ALJ found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. The ALJ discounted plaintiff's testimony about symptoms related to fatigue, somnolence, and heat intolerance because plaintiff did not seek treatment for them. Tr. 21; *see also* Def. Br. ECF No. 13 at 2. Because this rationale was insufficiently specific, and is not a "clear and convincing reason" to jettison subjective symptom testimony, the ALJ erred by doing so.

First, the ALJ failed to articulate the reason for discounting plaintiff's symptom testimony with sufficient specificity for this court to adequately review his decision. A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345–46 (citation and internal quotation marks omitted). In this context, that means an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Here, the ALJ failed to connect the dots. The written decision summarily concludes plaintiff's "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," and only cites plaintiff's failure to seek treatment for support.

7 - Opinion and Order

Tr. 21; Def. Br. at 2. This does not identify which of plaintiff's statements or what testimony is supposedly undermined by the record, or what parts of the record undermine it. For example, plaintiff testified at the hearing that he is "too exhausted…to leave the bed," Tr. 41 and "tired all the time." Tr. 43. The ALJ's decision does not identify specific symptoms or portions of symptom testimony that are unsupported, leaving this reviewing court to surmise which "testimony she found not credible" and what "particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is error, and the Court finds the ALJ therefore did not provide sufficiently specific reasons for discounting plaintiff's symptom testimony about these limitations.

The ALJ also erred by discounting plaintiff's subjective symptom testimony concerning fatigue, somnolence, and heat intolerance for the sole reason that it lacked corroborating evidence in the record. An ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise. That is, an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(internal citations omitted). With respect to plaintiff's fatigue, somnolence, and heat intolerance, that is exactly what the ALJ did, which was error. The lone reason the ALJ cited to discount the testimony was that plaintiff had sought no treatment for issues "approaching his claimed debilitating fatigue, somnolence, and heat intolerance." Tr. 21. Conflicting record medical evidence is a permissible reason to discount symptom testimony, but not lack of corroborating record evidence. *See Smartt,* 53 F.4th at 498. Because this was the ALJ's sole reason for discounting plaintiff's testimony concerning these symptoms, and it is error for an ALJ to rely on

8 - Opinion and Order

this reason alone, the Court finds the ALJ did not provide clear and convincing reasons to discount plaintiff's testimony about his fatigue, somnolence, and heat intolerance.

The ALJ also failed to provide a legally sufficient rationale to reject Plaintiff's reports of his mental health symptoms and limitations. The ALJ must consider Plaintiff's subjective testimony in light of the record as a whole; an ALJ may not cherry-pick isolated instances from the record. *Ghanim*, 763 F.3d at 1164 (noting that "some improved mood and energy level" did not contradict doctors' opinions that Ghanim could not work where "treatment notes consistently reflect that Ghanim continued to experience severe symptoms, including ongoing depression and auditory hallucinations, difficulty sleeping, nightmares, and memory loss"); *Garrison*, 759 F.3d at 1017. Here, the ALJ found plaintiff's mental health "treatment has proven effective" and that "[m]ental status examinations confirmed the effectiveness of treatment." Tr. 22 (citing intermittent improvement). A review of the record as a whole, however, reveals that plaintiff's mental health waxed and waned between 2017 and 2020, and that plaintiff's mental health reached a low at the close of the record. *Compare* Pl. Br at 29-30 (citing medical records showing worsening mental health symptoms) *with* Def. Br. at 3 (citing sporadic medical records reflecting improvement). In particular, the ALJ cited evidence of improvement in plaintiff's mental health from early-to-mid 2020 (*see* Tr. 22, citing Tr. 1051)), while plaintiff's mental health symptoms appeared to worsen later that year. *See, e.g.,* Tr. 1165-74, 1205, 1283. In sum, when viewed in the context of the record as whole, the ALJ improperly cherry-picked cycles of improvement as a reason to reject Plaintiff's subjective symptom testimony about his mental health. Thus, the ALJ did not provide clear and convincing reasons for rejecting this part of Plaintiff's testimony either.

## II. The ALJ properly evaluated medical opinions about plaintiff's physical limitations, but not about plaintiff's mental health

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

### A. Collin Blattner, D.O.

Dr. Collin Blattner, D.O., conducted a consultative physical examination of Plaintiff on July 27, 2019. Tr. 608-18. Dr. Blattner assessed Plaintiff to be a reliable historian and noted Plaintiff's complaints including fatigue and low energy that were worsened by medications,

10 - Opinion and Order

dreams and hallucinations, and one week of extreme abdominal pain each month. Tr. 608-09. Dr. Blattner noted the seventeen medications Plaintiff was taking and documented objective examination findings including that Plaintiff "was somewhat somnolent and had inappropriate eye contact." Tr. 608-12. Dr. Blattner concluded that Plaintiff has the following physical functional limitations based on Plaintiff's "chronic fatigue with somnolence on exam": maximum lifting and carrying capacity of twenty pounds occasionally and ten pounds frequently, and "[m]aximum standing and walking capacity is up to 4 hours in an eight-hour workday." Tr. 616. Dr. Blattner also assessed postural and manipulative limitations. Tr. 616.

The ALJ stated that Dr. Blattner's opined limitations "appear rather excessive" but concluded, "[n]evertheless, out of an abundance of caution, the undersigned has adopted Dr. Blattner's light residual functional capacity, along with his opined postural and manipulative limitations." Tr. 24. The ALJ later reiterated that "the undersigned has adopted the more restrictive residual functional capacity of Dr. Blattner out of an abundance of caution." Tr. 24. However, the ALJ found a portion of Blattner's opinion unpersuasive. The ALJ found that Dr. Blattner's opinion that plaintiff cannot stand or walk for more than four hours in an eight hour work was "not entirely consistent with observations of independent ambulation with normal gait, normal strength and range of motion, and normal heart and lung function." Tr. 24.

The ALJ properly considered the supportability and consistency factors when he found this portion of Dr. Blattner's opinion unpersuasive. Under the revised regulations, each medical source must justify their opinion with objective medical evidence and supporting explanations. 20 C.F.R. § 416.920c(c)(1). An opinion is less persuasive when it is not consistent with other evidence in the record. 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably rejected Dr. Blattner's opinion limiting Plaintiff to standing and walking for no more than four hours in an eight-hour

11 - Opinion and Order

workday because it was internally inconsistent, and conflicted with other record evidence. Specifically, the ALJ cited Dr. Blattner's own treatment notes, that showed plaintiff had a normal gait, strength, range of motion, and good heart and lung function. Tr. 24 (citing Tr. 613-14). These findings directly contradicted Dr. Blattner's other conclusion that plaintiff would have difficulty standing or walking for more than four hours in a work day, which was a sufficient reason to find Dr. Blattner's opinion unpersuasive. Because the ALJ properly considered the supportability of Dr. Blattner's opinion, and its internal inconsistency, the Court will uphold the ALJ's decision to find Dr. Blattner's opinion unpersuasive.

**B. Paul Haddeland, M.D.**

Dr. Paul Haddeland, M.D., served as Plaintiff's primary care doctor since February 2014. Tr. 1512. On November 23, 2020, Dr. Haddeland wrote his assessment of Plaintiff's mental and physical functional limitations. Tr. 1743-48. Dr. Haddeland opined that Plaintiff has "moderately severe" limitations, noticeable difficulty with distraction from job activity more than twenty percent of the workday, in the following mental functions: remember locations and work-like procedures, maintain attention and concentration for extended periods of time; perform activities within a schedule, and/or maintain regular attendance, and/or be punctual within customary tolerances; sustain ordinary routine without special supervision; and set realistic goals or make plans independent of others. Tr. 1743-44. Dr. Haddeland opined that Plaintiff has "severe" limitations in his capacity to understand, remember, and carry out detailed instructions; complete a normal work day or week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and travel in unfamiliar places or use public transportation. Tr. 1743-44.

12 - Opinion and Order

Regarding physical limitations, Dr. Haddeland opined that Plaintiff has exertional limitations including maximum capacity of standing and walking of about four hours in an eight-hour workday. Tr. 1745-46. Dr. Haddeland further opined that Plaintiff would need breaks in addition to normal breaks and that he would have "good" days and "bad" days such that he would be likely to be absent from work as a result of his impairments and/or treatment more than two days per month. Tr. 1745. Dr. Haddeland opined that fatigue and pain would cause occasional decreased functioning in attention, concentration, staying on task, attendance, tardiness, working at a constant pace without the need for extra breaks, and accepting instruction or criticism from supervisors. Tr. 1748.

The ALJ reasonably found the portion of Dr. Haddeland's November 23, 2020 opinion regarding physical limitations unpersuasive for their lack of support in the record and lack of consistency with other, persuasive medical opinions. Under the supportability factor, more weight is generally accorded to medical opinions that are supported by "relevant medical evidence" and the medical source's explanation. 20 C.F.R. § 404.1520(c)(1). "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Here, the ALJ found the opinion was not supported by Dr. Haddeland's own treatment notes. Tr. 25. For example, at the appointment immediately following Dr. Haddeland's opinion, his physical examination showed that Plaintiff was "well developed, well nourished, [and] in no acute distress;" there were no other objective findings. Tr. 1752. And, as explained above, Plaintiff did not seek treatment for the conditions Dr. Haddeland apparently thought were disabling. Dr. Haddeland's treatment of Plaintiff's swollen feet (Tr. 1056-57) and the birth control consultation (Tr. 1080) did not support his opinion that plaintiff had a maximum capacity of standing and

13 - Opinion and Order

walking of about four hours in an eight-hour workday. Tr. 1745-46. The ALJ reasonably found this portion of Dr. Haddeland's opinion was unpersuasive because it was unsupported by his treatment records.

The ALJ did not, however, adequately support his decision to find Dr. Haddeland's opinions regarding plaintiff's mental health unpersuasive. As discussed above, the ALJ erred by relying on isolated instances of improvement in Plaintiff's treatment history to discount Plaintiff's subjective symptom testimony about his mental health, and by extension, Dr. Haddeland's opinion. In particular, the ALJ noted Dr. Haddeland "simply listed the claimant's subjective allegations," which the ALJ improperly discounted. Tr. 24. The ALJ lacked clear and convincing evidence to disregard Plaintiff' symptom testimony, so likewise had no basis to reject Dr. Haddeland's opinions because they were based on "[Plaintiff]'s subjective allegations." With respect to the ALJ's conclusion that Dr. Haddeland's mental health opinions are inconsistent with "many largely unremarkable physical and mental status examinations" in the record, as indicated above, Plaintiff's mental health symptoms flared as much as they lessened; the ALJ's finding that treatment for mental health symptoms "has proven effective" is not supported by substantial evidence. Tr. 22; *see Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) (noting it is in the nature of mental health issues, like bipolar disorder to "wax and wane over time.").[2] Ultimately, the ALJ failed to cite substantial evidence to support his conclusion that plaintiff's

---

[2] The ALJ's decision to find mental health opinions of state medical consultants Scott Kaper, Ph.D., and Kevin Santulli, Ph.D. persuasive is defective for the same reason. Tr. 24. These Doctors failed to account for the yo-yoing of plaintiff's mental health symptoms, and crucially, did not review Dr. Hadelland's opinions and significant medical evidence after March 28, 2020. This evidence included Plaintiff's worsening depression and suicidal ideation in 2020, his admission to a peer-assisted crisis house, his difficulty meeting job requirements despite assistance through a county supported employment department, and ER admission for mental health reasons. Tr. 51-52, 1165-74, 1205, 1283, 1329-1408.

14 - Opinion and Order

mental health symptoms had resolved, and selectively neglected both plaintiff's testimony and Dr. Haddeland's opinion that Plaintiff's mental health symptoms were indeed disabling. Therefore, the ALJ committed harmful error by discounting Dr. Haddeland's opinion.

### III. Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

Here, the first prong is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony and for discrediting the medical opinions about his mental health.

As to the second prong, Plaintiff has already undergone one consultative examination and the Court finds remanding to further develop the record in that regard would serve little useful purpose. The Court notes that the ALJ found both Plaintiff's treating providers' opinions unpersuasive. *See Garrison*, 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted).

As to the third prong, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Dr. Haddeland opined that Plaintiff would be off task more than twenty percent of work time, and absent from work more than two days per month. Tr. 1745. The Vocational Expert testified that a person off task more than twenty percent of the work day or absent two or more days a month "wouldn't be employable." Tr. 58. Thus, in fully crediting the medical opinions as true, the ALJ would be required to find Plaintiff disabled on remand. *See Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had marked limitations in her ability to ... maintain regular attendance, and be punctual within customary tolerances" combined with VE testimony that "individuals who miss two or more days on a chronic basis are not competitively employable" warranted remanding for an immediate calculation and award of benefits), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010).

## ORDER

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

It is so ORDERED and DATED this 1 day of May, 2023.

MARK D. CLARKE
United States Magistrate Judge